In addition, we've heard of this court of two of my law clerks, Pamela C. Foley and Justin B. Rodriguez. Do you have the papers there, Linda? Right, that's fine. Pamela and Justin, if you would come forward. Just to the podium. Don't worry, we're not going to ask any questions. He's not going to ask any questions. She will. It is a privilege to have you as clerks this year. I look forward someday maybe to you being at this podium. We'll turn the red light off and have fun. We'll just keep going forever. But really, I cannot say enough about how privileged I am to have you with me. And with that, I would move the admission before this court. You can dissent if you want, Frank. No, no, I'll join in the majority. I concur as well. Linda, would you? Absolutely. Please raise your hand. Do you solemnly swear or affirm that you would demean yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the prosecution of the United States? I do. Congratulations. All right. Don't screw this up. We have three cases this morning. The first case we have is United States v. Radock, a.k.a. Radoz, No. 11-44, Mr. Donohue and Mr. Shapiro or Shapiro? Shapiro. In Philly, it's often Shapiro. So, Shapiro and Donohue, Mr. Donohue. Good morning, Your Honor. As the man who leads the court, Keith Donohue, for a count pose me audacity. With the court's leave, I'd like to reserve three minutes of my time. That's fine. Thank you, Your Honor. Your Honor, this case presents the issue of whether and when prejudice must be presumed due to extraordinary delay in a supervised release verification proceeding. The first question, I guess, is who caused the delay? The government caused the delay. Now, did your client cause some of it, too? Certainly. You started filing a lot of papers after 1999. Is that correct? He filed a few papers. I would submit, Your Honor, that the government's briefing grossly distorts the record in case No. 98-587, which is a separate freestanding proceeding in which my client is accused of supposedly extreporous litigation. I refer the court to a few portions of the appendix that bear that out. First of all, most of the delay in that case was due to the court's reasonable enough determination for purposes of that prosecution to put sentencing on hold pending resolution of apprendee fallout. And you can look at pages 76 and 77 of the appendix, and specifically docket entries 534 and 615, to see the length of time that contributed. After the 2255 proceeding that followed the appeals in that case, most of the delay was due to the replacement of the presiding judge, and to the length of time it took appointing counsel to file his papers upon appointment. First of all, the standard review here is plain error, is it not? No, the standard review is not plain error since the objection to delay was brought to Judge DuBois' attention in the revocation proceeding. When was it brought to his attention? 2011? At the first opportunity my client had to appear before the court and object to the delay. He could have filed a written objection any time prior to 2011, between 99 and could file it in 04, 05, 06. Well, throughout that period he was not represented by counsel and I... Well, he sure knew how to file other pres-say things, didn't he? In a separate proceeding where he was aware of what was going on. In this proceeding he hadn't even been brought before the court. Let's cut to the quick. What's the prejudice? Wasn't he in jail on other charges? Well, we certainly don't know the full extent of the prejudice, Your Honor. We know from Supreme Court precedents such as Smith v. Huey and Strunk v. United States that even when a defendant is in jail under an uncharged sentence, the uncertain prospect of an additional consecutive sentence will ordinarily be presumed to result in substantial anxiety. That's one dimension of prejudice. Another dimension is that the delay carried on for so long in this case that the record itself was lost. Another dimension of prejudice is that there was a detainer lodged against my client which caused his security classification to be increased and therefore may have either led to additional restrictions on his liberty... You said may. There's no evidence that it actually did result in additional restrictions on his liberty or inability to participate in any programs, is there? There's not evidence of records of that effect. And that goes to the broader point which is that so much time has passed that we don't know and we can't possibly lay our hands on now the full extent of the prejudice. You can't point to any prejudice with respect to the disposition of the charge of the supervised revocation violation? We do not. I was stressing the fact that we don't maintain that prejudice consists in that regard. The locus of prejudice is in the loss of opportunity of my client to develop a case in mitigation, what capital lawyers would call a case for life or what my lawyers might call... Okay, so looking back, you've been able... It's not that far back. We often go back further than 99 in a number of cases. What prejudice can you possibly think of that existed with regard to someone who committed a supervised release violation, and if it is determined that he did violate his supervised release conditions, there can be a sentence tacked on to it, that is, a consecutive sentence? I can think of several forms of prejudice, Your Honor. It's a lengthy period of time, I would submit, in fact, a dozen years. Here are two... No, 24 months. 24 months. Okay, I'm sorry, I see what you're saying. The amount of time he was in prison... 12 years had passed before he was heard on the violation charges. The two most obvious types of prejudice that could spring to mind is that when someone's in prison for 12 years, they'd like to lose touch with the family and friends from whom isolation... from whom imprisonment isolates them. So the prospects of being able to call upon a free friend or relative who might have been able to come before the court and ask for lenience on his behalf or speak to his positive qualities was... I mean, first of all, I mean, there were drug violations, right? I mean, that's got nothing to do with somebody calling a family member. The family member's going to testify, I suppose, to the person's character, but there's no doubt that there were supervised release violations. Yes, as I said to Judge Van Aske, there's no issue that there were violations. The issue here is what prejudice was caused there. Is there any evidence in the record that he has family members in the United States? There is, in that some of his family members were prosecuted with him. Okay. There are likely to be ones who call upon to ask for leniency, I take it? Right. So I don't know what the other family members... I presume he has some family outside of jail. We don't know that. These are interesting arguments that matter about the family. Is that in the record somewhere? There is not this sort of evidence about what family he has in the record because of how much time has passed. Well, we know. He said he was given the opportunity to speak at the time of his sentencing by Judge DuBois, wasn't he? The revocation. I mean, he could have put that on the record then, but he didn't, did he? Well... I don't know, how did we wind up if we let people come in here and bring up matters that are not on the record? This case is not a watershed that will open doors in any number of other cases. This case is extraordinary, Your Honor. The delay carried on for so long in this case to take a measure of it. When the violation petition was filed, former Governor Eliot Spitzer was a virtual unknown, even on Wall Street. A teenager named Britney Spears had yet to release her debut single. The media was abuzz with the act being launched today, and no one had ever heard of something called 9-11. All we know is that the more time that passes, the more evidence that gets lost. So if the rule is that... Okay, looking back, what do you really think that evidence would be that's not available today, that would have been available had the revocation hearing been conducted, let's say, in 2004? Because I think you really have to exclude from 1999 to 2004, do you not? No, you don't, but I'll grant you 2004 is an important date to look at. I don't think it's quite as simple as we only look back to 2004. We've got four factors. So the length of the delay takes us all the way back to 1999. Judge Randell's decision, which he joined in the United States v. Battis, explains that when you look at the length of the delay, we're not looking at who caused the delay. First, we're just looking at how long the delay was. You're talking about presumption of prejudice. You're talking Darwin, I think it is. The Supreme Court said if it's long enough to perhaps confirm the proof of particular prejudice, it's not essential. You're talking about a certain presumption here. Right, I think the court really needs to grapple with when it's going to presume prejudice in a supervisory case. Irrebuttable prejudice? No, a very important point, Your Honor, would not be irrebuttable prejudice. It would always be open to the government to rebut the prejudice. That's an important point. We're not asking for a person automatically to win because of the delay. We're asking that the defendant not be the one on whose onus it is to show the prejudice when this kind of time has passed. We know that time... I thought the argument that you were going to make, and you did make it in your brief, is that what happened was it got so boxed up that, yes, he has a revocation hearing that's postponed in 1999 because there's another charge over the case. He comes before Judge Brody for sentencing in this other matter in 2004. I thought your argument was that what happened was that his supervised release violation was taken into account by Judge Brody in her unrelated sentencing in 2004. Therefore, he was punished twice. Well, that is the second issue, Your Honor. That's a hat argument we're making. That is a discrete issue from what I think is the... Can we move to that? I would just like to make the point... No, we're in charge here. Okay, let's move to that. Your time is running out. You're talking about the fact that you say that she took into account that he had violated his supervised release. In what way did she do that? I think you're really talking about two things, aren't you? Number one, you say that it affected the calculation, the criminal history category. Number two, she did make mention when she calculated drug amounts, she said moments after he was released from prison, he committed offense. Is that what you're talking about? Yes. It didn't actually affect his criminal history category. It added two points. Correct, it didn't, did it? Because once you have 13 points, you're in column 6 regardless, right? Yes. It didn't matter in his case because he was a clear offender, so he was automatically criminal history category 6. The way it mattered in his case is that we can tell from the sentencing transcript before Judge Brody that she was quite moved by the extent of his criminal history. And I think as the district judges know, the thing that really matters is how many criminal history points there were. So although it didn't affect his criminal history category, I think it probably added to the way she perceived him. Based on what? Based on my experience in sentencing proceedings, I don't know a total number of sentencing proceedings. But you'll admit there's nothing in the record to indicate that it did. At no point did she say points. She talked about criminal history, and she did say in making the drug calculation she referred to an offense by saying it was the one that was moments after he was released from prison. Other than that, there's really nothing in the record, is there? There's also the point that she suggested his criminal history as such. But the pre-sentence report that Judge Brody relied on said that Mr. Bordas would be brought before Judge DuBois concerning his supervised release violation. That seems to make your case a lot harder. The core of the second issue is that Judge DuBois stated that Mr. Bordas had been sentenced before Judge Brody as if he were not on supervised release. Those were his words. Not that Judge Brody considered it in some way different from how he was supposed to consider it, but as if she treated him as if he were not even on supervised release. And that is simply factually erroneous. So Judge DuBois needs to express something else with more precision. To what can you point in the record to show that Judge Brody punished Mr. Oydock based on a breach of trust relating to the supervised release violation? I don't think she did have in her mind that he had a breach of trust. The attorney back then certainly didn't think she had it in mind either, did he? No. And Judge DuBois did not say that what he was doing was punishing Mr. Oydock for a breach of trust. You'll find those words nowhere in Judge DuBois' explanation of the sentence. So that implicit and irrevocation of supervised release. The factors are very similar. The statutory factors, with one or two exceptions, are almost identical whether you're sentencing for a substantive offense or a violation of supervised release. Like the thing you're supposed to look at. There's one or two minor differences. But the real difference is the breach of trust. Isn't that the difference in violation of supervised release? Isn't that the real factor? That is under this court's jurisprudence, which the United States Supreme Court's decision in Tapia has thrown into some doubt. But my point is that Judge DuBois did not state that he needed to respond to the breach of trust. That's not what Judge DuBois said. Well, of course not, but that's implicit, isn't it? I don't think it is implicit when the judge says three times, you've been sentenced before Judge Brody as if you were not on supervised release. If he meant something else, then it's his responsibility to articulate that with greater precision. And he may have the opportunity to do it. And did you object? Was an objection made to that? No objection was made to his explanation of sentence as is not required under Savia in Rule 51. Thank you very much. We'll get you back on rebuttal. Mr. Shapiro. Good morning. May it please the court. My name is Paul Shapiro. I'm an assistant United States attorney, and I represent the United States in this case. You're saying Judge DuBois' observations about Judge Brody's sentence are statements of law in general. But aren't they really statements of fact? They are statements of fact. Aren't they erroneous? Actually, they are not erroneous. And I think they are. What Judge DuBois is explaining directly to the defendant as well as the defendant's counsel in several cases of colloquy is that in his view after 20 years of being a district judge and sitting on both trials and revocation proceedings, that the purpose of the proceeding that was before him was, in his words, incremental punishment, which takes us back to the distinction between the two as laid out in the guidelines in breach of trust, which is, in my view, a legal concept. What he's talking about is there are two... He's not taking it into account. Isn't that somewhat abstruse? It's really difficult to know what he meant by that, isn't it? I actually think it's not difficult to know what he meant. I think when you read the entire colloquy, he's being not literal in the sense that she was entirely unaware of it. Obviously, she's going to be aware of it. Indeed, it played a part in the trial before Judge Brody, the fact that he had just been released from prison. That would be an absurd thing for him to be saying. There is a back and forth between the judge and defense counsel about the need for incremental punishment, and that all stems, as the guidelines make very, very clear, out of the fact that when a supervised releasee commits a new crime,  It is a violation of the laws, but it also is a separate and independent breach of trust, and he was getting at that. But as it happens, and I don't know that he was aware of it, he was, as Judge Manaski points out, factually accurate. If his sentence had been, instead of five years of supervised release, five days of supervised release, so that the supervised release expired before the defendant committed his new crimes, the defendant's sentence and guidelines would have been identical. The defendant's situation before Judge Brody would have been identical, because he would have been standing in front of her, having just been released from prison weeks before. His criminal history would be identical, because he was, as this court's published opinion points out, in the top guideline range, because he was a career offender. Why did the government not pursue revocation once Mr. Radock began challenging his sentence only, and not his conviction? I think the answer to that, Judge, obviously I was not trial counsel, but there is a huge difference between the way supervised release cases are prosecuted and handled, their very existence, and trial matters. The government is responsible for initiating charges in a criminal case. The government is responsible for arresting the defendant in a criminal case. The government is responsible, less so, but still responsible for prosecuting the trial. Are you saying, are you suggesting here, like the answer, that it's not the government's fault it took 12 years to get this guy to a supervised release revocation hearing, it's the court's fault? I'm not sure that, I wouldn't use the word fault, Your Honor. What I'm saying is that there is a, A, responding to a question, which is, why did the government do nothing? Right. And part of the answer to that is, a supervised release revocation is, at heart, a very different thing. It is a matter, it is a violation of a court order. It is initiated by an arm of the court. It is, the warrant is issued at the request of an arm of the court. When the matter is heard, yes, the U.S. attorney is there, the U.S. attorney is the prosecutor, but really the motivating agency is the probation office, which is an arm of the court. And the court has very, very substantial control over how the thing will proceed. So it is different. Would you conceive that there would come a point in time when the delay was so lengthy that it would require dismissal of the supervised release petition, revocation petition? I would not conceive that. And this guy's got about a 25-year sentence. So you're saying he could wait 22 years and get a sentence? The answer is, in the context of supervised release, the due process requires a demonstration of prejudice before there is a violation. So are you asking, is it conceivable that there is a case where, after 22 years, there still would be no prejudice? Yes, it is conceivable. Are you asking me, would it be likely that after 22 years you could demonstrate prejudice? Yes. But in every case of this kind, prejudice is an absolute requirement. And in a case such as this, where the violation that is driving this train is a judgment from the same district court, which is then on... Could there come a point where there would be a presumption of prejudice? There would not. A presumption of prejudice is appropriate in the case of a speedy trial violation, because trials are very, very different animals. So you feel we should not extend that rule? You should not extend it. Indeed, no court ever has extended it, and this court has suggested, it's not held. Well, held in a non-presidential opinion, but this court has suggested that... Should we consider, for example, doing what the Seventh Circuit did in the United States v. Rasmussen, which is apply the Barker v. Wingo Sixth Amendment speedy trial right factors to revocation proceedings? We do think that you should. Those are the appropriate factors, but as this court has recognized, they mean different things, and they're evaluated in different ways. In Rasmussen, there was only a 13-month delay. Here, there was a 12-year delay. My first question to you was, why don't you do something in effect? Why don't you do something between 1999 and 2004, when there was a sentencing before Judge Brody? And you answered that. But then, after that, there's a 7-year delay. I mean, there's nothing in the record that I can see why. Do you have any inkling as to why this thing just sat for 7 years? I do, I do, and I had meant to get to it, and I thank you, Your Honor. I understand this is a proceeding that's going before Judge Du Bois, who I know, and my office well knows, is very, very cognizant of the defendant's rights at every stage of the proceeding. And what the judge was doing was, A, not inadvertent, which is clear from the fact that the minute that Judge Davis was done with the 2255, the violation hearing got scheduled. So not inadvertent. He wanted Du Bois to settle and all the other proceedings before he went and did that. Because this is a defendant who is insisting from the get-go that he is not guilty of this crime. I agree that he could have gone forward in 2004 without fear of being reversed. But you have a defendant who is absolutely insistent that notwithstanding conviction and appeal, he did not actually do it. And if, in fact, he did not actually do it, there would not have been a violation. And so Judge Du Bois was bending over backwards to give this defendant who protested his innocence from day one. And if you look at the 2255, ironically, he claimed he didn't, in fact, do the crime. He also claimed, ironically enough, that his trial rights had been violated under the Speedy Trial Act. Don't most district judges tend to wait when there's an incident of criminal violation involved in violation of supervised release? Don't most of them tend to wait until the underlying charges are disposed of and then proceed with the revocation? They do tend to wait. And this Court has held in the context of a state revocation proceeding that to do so is reasonable. How about waiting until the appeal is over? It seems to me that the reasonableness of that conduct depends on the position of the defendant and, more importantly, the nature of the violations. How about waiting until collateral attack is over? How far out do we go? It seems to me, in this case, that what the judge is doing is he's bending over backwards to give the defendant every opportunity to prove that he's not, in fact, guilty of the crime, he's not, in fact, guilty of the violation. Even if he was successful in mounting a collateral challenge to the validity of his conviction, it wouldn't preclude the district court from proceeding on the Superior Review, proceeding on the supervised release violation charges. You've got a lesser standard to prove there. That's true. And I don't deny that it could have gone forward from the moment that the violation was filed. So you're hedging your bets. I'm sorry? You're hedging your bets. Well, we're not hedging anything. I mean, understand, this is not a decision driven by the U.S. Attorney's Office. This was a judge who made, yet it's clear from the record, a conscious decision to afford this defendant every opportunity to disprove. Because the reality is, as long as the conviction stands, there's nothing else to be said from the defense perspective. And the judge could have said to him, look, I'm going to go ahead. You've been convicted. Your appeal has been affirmed. It's 2004. Enough is enough. I'm going to go ahead. Let's look at half the violation here. If you succeed in mounting a collateral attack, you come back and we'll talk about it. That would have been appropriate, but not necessary. And much less protective of the defendant's interests at that time, because that, A, puts the onus on the defendant to come back, and B, subjects that defendant to any collateral consequences than having a finding of a violation. Whatever kinds of speculative prejudice you can say that there is from having a detainer lodged, had the judge found you have violated my order, that would certainly carry into his criminal record and his prison record as well. So you have a judge who could choose either course and has the discretion to do so. And there are cases where it certainly would be prejudicial to proceed the way he did, where the underlying violation is highly fact-bound and witnesses become unavailable or something of that nature. But this is not such a violation. And there was no risk of prejudice. And indeed, if you look at the colloquy between the defendant and Judge Du Bois, the judge said as much to him in the remark that the defense relies on to get us out of plain error. And you have to go back to that transcript. Can you tell me, again, why you are saying the judge wrote and didn't take the violation of supervision into account? I'm saying two things, really. First, I'm saying that what Judge Du Bois was saying was... I'm not talking about what she said at the time. She said 2004. 2004. Judge Brody did not take into account the fact that he breached Judge Du Bois' trust. That's point number one. Because it's not expressly stated in the record? Because it's not expressly stated in the record, but also because when she talks about his criminal history, she talks about the things that he did, she doesn't say to him, I'm increasing your sentence. Because look, you violated the trust of this very court. That is a matter that is appropriate. Moments after he was released from prison. And that is a history and characteristic of the defendant. But he could have been released from prison without being on supervised release. That doesn't... We're talking about things that are related. I'm not saying that there's no overlap, but that overlap is absolutely... Where you are on the criminal history chart has driven this sentence up. I think your prior criminal history, she went on about that. How about that? Imagine my hypothetical, which is that Judge Du Bois ordered five minutes of supervised release upon the conclusion of incarceration. The defendant serves his five minutes without violating it. Then 15 minutes later gets involved in a drug violation. Everything that Judge Brody said would have been absolutely identically true. And every part of his criminal history would have been absolutely identically the same. Isn't the easy answer only that she had before a PSR that specifically noted that there was a supervised release violation, a revocation hearing coming up, and it was to be before Judge Du Bois at some point? Yes, Your Honor. That is the easy answer. Actually, there are a lot of characteristics of defendants that both judges would have taken into account in the pre-sentence report. Much of the information was the same, I'm sure. There's no Chinese wall between these proceedings. But as the guidelines make plain, the underlying concept is one is addressing the violation of the law and one is addressing the breach of trust. And though Judge Du Bois may have not used the words breach of trust, that is what he was doing. And appropriately so. Indeed, he was being quite lenient. He felt appropriately that the insult to his order warranted additional punishment, which a concurrent sentence would not be. But decided that a short additional punishment was appropriate notwithstanding what the guidelines otherwise recommended. Thank you very much. Mr. Donohue. Mr. Donohue, the first question is Mr. Shapiro has noted that in effect what happened here is that the system, whoever was the player in the system, be it the probation office, be it the district's office, whatever it might be, be it the judge, they waited until it was crystal clear that their all avenues to try to deal with the earlier conviction were dealt with. And immediately after that, almost immediately after that, then you had the revocation hearing. With all due respect to my colleague from the attorney's office, the record shows the opposite of what he argued, and I defer you simply to page 39 of the appendix. What does that say? There, the court says to my client, well, they were violated by the conviction, which is the jury verdict. We have that on appeal, and that's fine. And the ASA handled the matter, and the trial court said, Your Honor, if I may, just for the record, there was a direct appeal taken by Mr. Royak. Judge DuBois' response to that is, Is it resolved? Judge DuBois was not following the course of proceedings in the independent prosecution. That's wrong. Was it the probation office that then asked that it be set up for a revocation hearing at that point, or who made the, who was the catalyst for the revocation hearing on the 11th? The record doesn't show. We suddenly have a notice from the court that there will be a revocation hearing. I can understand the logical coherence of my colleague's position that it would be, the onus would be on the probation officer. I would say, since the government's asking for a lengthy consecutive penalty, there's some onus on it as well. Really, we'll take it either way. The fact is that it's utterly wrong, utterly and flagrantly inconsistent with this record to state that Judge DuBois was letting the course of the freestanding prosecution wind all the way through collateral proceedings before proceeding. And Judge DuBois' own words at page 39 of the appendix show that without a doubt. Moreover, we have an awful shell game going on here. We've got the AUSA saying it's the court's responsibility. Here's what the court said at sentencing after my client said, isn't there some kind of limitation? I've been trying to get... I think the AUSA started off by saying it was the probation office. Okay, the probation office has an arm of the court. Judge DuBois, I agree, is a very conscientious judge. Unfortunately, this case may have slipped through the cracks. But whether it's the probation office or the... As we used to say back where I grew up, there ain't no doubt about it. He's conscientious. Right, absolutely. And so the shell game here appears where Judge DuBois states after the court has said, there's been so much delay. I've been trying to get before you since 2004. Judge DuBois states, until your conviction... This is after Judge DuBois has revealed that he wasn't following the course of the prosecution after the AUSA has explained to him what the course of the prosecution was after that. Judge DuBois says to Mike Lange, until your conviction, you have not violated that provision of supervised release. So you have to be convicted by the jury. But once that happened and he began the final appeals, the government is permitted to delay in having this hearing as they did. So we have the judge putting the onus on the government. We have today the government putting the onus on the court. We have Mike Lange sitting in prison for seven years asking to be put on trial. And then the question then comes, let's assume you're right on everything you say. Let's go back to Judge Van Tropen's question at the outset. What is the prejudice? Well, I've done my best to say what prejudice the record shows, but I confess, Your Honor, we have not affirmatively shown prejudice. And the rule has to be, contrary to what my colleague says, that there must come a point at a revocation proceeding when prejudice will be presumed. That's because we know that the more time passes, the more evidence disappears. So if the rule were that you must invariably show prejudice, then that would mean the longer the delay, the less availability of relief. If we had to adopt a simple rule, how far out would you suggest we should go? Should we say it's all right for a district judge to wait until the underlying criminal proceeding is resolved? I mean, you don't want to have two trials. Economy, one of those things. All right. Does it allow for him to then wait until the appeal is over? It's going to vary case by case on the Barker v. Wendell factors. In this case, a really critical point is that beginning in 2004, so after judgment was entered, my client started asking to be brought in for the hearing. When that's the situation, the judge has to proceed promptly. The only thing you have on that, though, is him saying at the revocation proceeding before Judge DuBois that he had been asking since 2004 and the silence of Judge DuBois and the government. You don't have any letters. I mean, he would have had to do it in writing. I don't think he could pick up the phone from prison and call the chambers, so... Right. Well, he didn't have any reason to elaborate while he was standing there because people were silent. Now, it might be an appropriate disposition here to remand for a limited hearing as to whether the right was asserted, and we're confident we'll make that showing. We would ask that the remander act that upon that showing the petition be dismissed. But doesn't the government get to rebut prejudice? Yes, the government could try to rebut prejudice, but... All right. Yes. But that would be their responsibility. Rebutting would be presumed otherwise. Thank you very much. Thank you to both counselors for presenting all of this. Mr. Duffy, was this your first argument for court of appeals? No. OK. We had a motion that we would have you do it, so I didn't know if it was your first. But well done, both of you.